IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 19-CR-30036-NJR-1 |
| CURTIS W. BARNETT, | |
| Defendant. | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Motion to Suppress Evidence filed by Defendant Curtis W. Barnett (Doc. 41) and a Response to Defendant's Motion to Suppress filed by the United States (the "Government") (Doc. 55). The Court heard oral arguments by both parties, as well as testimony from Patricia McKissic, Officer Michael Benda, Sergeant Gary Craig, and Officer Cody Mersman, at a hearing on June 1, 2020. For the reasons set forth below, the Defendant's motion to suppress is denied.

### FACTUAL & PROCEDURAL BACKGROUND

According to an incident report from the Cahokia Police Department, on July 19, 2017, Barnett was taken into police custody in relation to an aggravated battery at 1216 Price Street, Cahokia, Illinois (Doc. 27-1, p. 1). Law enforcement recovered a "firearm projectile," "a spent shell casing," and "2 live bullets" from the crime scene, but no firearm (*Id.*). The department conducted a gunshot residue collection kit on Barnett's hands (*Id.*), which indicated Barnett "discharged a firearm, contacted a [primer gunshot

residue] related item, or had both hands in the environment of a discharged firearm" (*Id.* at p. 4). Barnett later posted bond and was released from custody.

In another incident at around 4:15 a.m. on February 24, 2019, Patricia McKissic, Barnett's girlfriend, called 911 to report a domestic battery by Barnett (Doc. 55-1, p. 1). McKissic requested medical help, whispering to the operator that Barnett beat her up and forced her into his Price Street house (Gov't Ex. 1). At around 4:18 a.m., Benda and Mersman arrived at Barnett's house as a two-man patrol unit (Doc. 55-1, p. 1). Craig arrived at the same time (Doc. 55, p. 2). Officers saw McKissic run out crying and noticed injuries and swelling to her face (Doc. 41, p. 1, Doc. 55, p. 2, and Doc. 55-1, p. 1).

Barnett's front door consisted of a wooden door that opens inward and a glass door that opens outward (Doc. 41, p. 2). Benda, in his police report, described that Barnett was standing in the doorway of his house with his left hand holding the door open and his right hand behind his back (Doc. 55, p. 2 and Doc. 55-1, pp. 1-2). Benda ordered Barnett to exit the house, but Barnett turned to go back inside (Doc. 55, p. 2 and Doc. 55-1, p. 2). Benda stepped into the house through the open front door and detained Barnett (*Id.*). Benda used a flashlight to see the area around where Barnett was standing and found a firearm on the couch (*Id.*). The firearm was logged into evidence, and lab results indicated the weapon shot the projectile recovered from Barnett's home in July 2017 (27-1, p. 3).

In July 2019, Barnett was charged in a Superseding Indictment with two counts: (1) possession of a firearm by a felon related to the July 2017 incident, in violation of 18 U.S.C. § 922(g)(1); and (2) possession of a firearm by a felon related to the February 2019 incident in violation of the same statute (Doc. 20). On November 8, 2019, Barnett

moved to suppress the evidence seized during the arrest in his house on February 24, 2019 (Doc. 41). Barnett claims that his Fourth Amendment rights were violated during the warrantless search of his house (*Id.*, pp. 1 and 8). Specifically, he asks this Court to suppress the firearm seized as the fruit of the warrantless entry into his house (*Id.*, p. 8).

On February 28, 2020, the Government filed a response to Barnett's motion to suppress (Doc. 55). Both parties requested a hearing on the motion (Doc. 41, p. 8 and Doc. 55, p. 8). The hearing was delayed several times because of the COVID-19 pandemic, but was eventually held in person on June 1, 2020.

At the hearing, McKissic testified that following several incidents of domestic battery throughout the night in February 2019, Barnett forced her into his residence and would not let her leave. McKissic, Benda, Craig, and Mersman testified to a call for service regarding the domestic disturbance. McKissic specifically testified that when she called 911, she told the operator that Barnett beat her up, and she could not leave the residence. All parties also testified that McKissic quickly exited the house when police announced their presence, and Barnett followed close behind her.

After the hearing, Barnett filed a post-evidentiary hearing memorandum and the Government followed with its response (Docs. 74, 77).

## LEGAL STANDARD

The Fourth Amendment to the United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. In order to "compel respect for the constitutional guaranty," the Supreme Court of the United States created the

exclusionary rule. *Davis v. United States*, 564 U.S. 229, 236 (2011) (citing *Elkins v. United States*, 364 U.S. 206, 217 (1960)). When applicable, that rule forbids the use of evidence obtained by police officers in violation of the Fourth Amendment. *Davis*, 564 U.S. at 231-32.

It is well established, however, that a violation of the Fourth Amendment does not necessarily mean that the exclusionary rule applies. *Herring v. United States*, 555 U.S. 135, 140 (2009) ("We have repeatedly rejected the argument that exclusion is a necessary consequence of a Fourth Amendment violation."). It applies only when the benefit of deterring future Fourth Amendment violations outweighs the heavy costs of suppressing evidence. *Id.* at 141. "The principal cost of applying the rule is, of course, letting guilty and possibly dangerous defendants go free." *Id.* (citing *United States v. Leon*, 468 U.S. 897, 908 (1984)); *see also Davis*, 564 U.S. at 237 ("Exclusion exacts a heavy toll on both the judicial system and society at large" because "its bottom-line effect, in many cases, is to suppress the truth and set the criminal loose in the community without punishment."). As a result, exclusion "has always been our last resort, not our first impulse." *Herring*, 555 at 140 (citing *Hudson v. Michigan*, 547 U.S. 586, 591 (2006)).

Furthermore, although it is a "basic principle of Fourth Amendment that searches and seizures inside a home without a warrant are presumptively unreasonable," *Groh v. Ramirez*, 540 U.S. 551, 559 (2004) (quoting *Payton v. New York*, 445 U.S. 573, 586 (1980)), the Supreme Court of the United States has recognized that the presumption may be overcome in some circumstances, and hence the warrant requirement is subject to certain exceptions. *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006); *see also Michigan v. Fisher*, 558

U.S. 45, 47 (2009). One exception is when "the exigencies of the situation make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment." *Kentucky v. King*, 563 U.S. 452, 460 (2011) (quoting *Mincey v. Arizona*, 437 U.S. 385, 394 (1978)).

Elaborating on exigencies, the Supreme Court has held that police officers may make a warrantless entry onto private property to engage in hot pursuit of a fleeing suspect. *United States v. Santana*, 427 U.S. 38, 42-43 (1976). Additionally, the United States Court of Appeals for the Seventh Circuit has found exigent circumstances justifying warrantless entry where police officers fear that a gun may be fired at them or others within a dwelling. *United States v. Ross*, 565 F. App'x 505, 509 (7th Cir. 2013). The Ninth Circuit also has recognized that an exigency exists where a reasonable person would believe that an entry onto private property or other prompt action was necessary to prevent physical harm to police officers or other persons. *United States v. McConney*, 728 F.2d 1195, 1199 (9th Cir. 1984). Moreover, where law enforcement is responding to a crime reported to be in progress, an officer's judgment is given an even greater degree of deference regarding exigencies. *Reardon v. Wroan*, 811 F.2d 1025, 1029 (7th Cir. 1987).

## DISCUSSION

In his Motion to Suppress, Barnett alleges that his Fourth Amendment rights were violated during the warrantless search of his house, and thus the firearm must be suppressed as the fruit of unlawful search (Doc. 41, pp. 1 and 8). In support of his motion, Barnett asserts that the warrantless search and seizure inside his home was unreasonable under the Fourth Amendment; probable cause cannot justify the warrantless search and

seizure; there were no exigent circumstances requiring emergency assistance; the police officers were not in hot pursuit as Barnett was not fleeing but attempting to close his front door; and there was no plausible risk of imminent destruction of evidence inside his house (*Id.*, pp. 3-8).

The Government responds that Barnett's Motion should be denied because the police entry of Barnett's house was justified under the exigent circumstances exception (Doc. 55, pp. 3-8). Specifically, the Government argues that the police officers reasonably feared that a gun may be fired at them or others in the house, and they were in hot pursuit of Barnett (*Id.*).

**I.      Hot Pursuit of a Fleeing Suspect**

One exigency obviating the requirement of a warrant, as mentioned above, is hot pursuit of a fleeing suspect by police officers. *Santana*, 427 U.S. at 42-43; *see also United States v. Lenoir*, 318 F.3d 725, 730 (7th Cir. 2003). In *Santana*, the Supreme Court held that the police may conduct a warrantless arrest upon probable cause on the threshold of a defendant's open front door, where the defendant was "not merely visible to the public but was as exposed to public view, speech, hearing, and touch as if [the defendant] had been standing completely outside [the] house." *Id.* at 42 (citing *Hester v. United States*, 265 U.S. 57, 59 (1924)); *see also United States v. Watson*, 423 U.S. 411, 424 (1976) (warrantless arrest of an individual in a public place upon probable cause did not violate the Fourth Amendment.). The Court found that a person standing in the doorway of a house is "in a public place," and thus subject to arrest without a warrant permitting entry of the house. *Santana*, 427 U.S. at 42; *see also Illinois v. McArthur*, 531 U.S. 326, 335 (2001).

Notably, the *Santana* Court clarified that although "'hot pursuit' means some sort of a chase," "it need not be an extended hue and cry in and about the public streets. The fact that the pursuit [] ended almost as soon as it began did not render it any the less a hot pursuit sufficient to justify the warrantless entry." *Santana*, 427 U.S. at 43 (internal quotation marks omitted); *see also Armstrong v. Maloney*, 2012 WL 567427, at *5 (N.D. Ill. Feb. 21, 2012). The Seventh Circuit has further found that "police who espy a suspect in the frame of a front door have found the suspect in a 'public place' and therefore may follow the suspect into the interior of the house as part of 'hot pursuit' even without a warrant." *United States v. Jones*, 149 F.3d 715, 717 (7th Cir. 1998) (citing *Santana*, 427 U.S. at 49).

Additionally, in *Warden, Md. Penitentiary v. Hayden*, the Supreme Court held that police may upon probable cause make a warrantless entry to arrest a suspect and to search for weapons. 387 U.S. 294, 298 (1967). In *Hayden*, seized items during a warrantless entry into premises and a subsequent search were admitted into evidence. *Id.* at 296. The Court reasoned that the Fourth Amendment allows intrusions upon privacy and the warrantless entry and search under the circumstances where the seizure occurs contemporaneous with an arrest, as part of an effort to find a suspect that ran into a house. *Id.* at 298-299 and 301-302.

Under *Santana*, *Jones*, and *Hayden*, police officers can follow a suspect from the doorway into the house as part of hot pursuit and seize firearms without a warrant. Citing cases from the Sixth and Seventh Circuits and a district court in the Northern District of Indiana, however, Barnett contends that there was no hot pursuit because he was not in

a public place and was not fleeing (Doc. 41, p. 6). Those cases differ, however, in the facts negating a public place distinction. In *Cummings v. City of Akron*, 418 F.3d 676, 686 (6th Cir. 2005), the arrestee only opened the door at the request of the police, and in *Sparing v. Vill. of Olympia Fields*, 266 F.3d 684, 690 (7th Cir. 2001), the arrestee stood inside his house, behind the closed door, not in an open doorway. In *Franklin v. Civil City of S. Bend*, there was no hot pursuit, and police officers mistakenly arrested the wrong person—a minor who committed no crime—by entering the wrong house. 2015 WL 5174060, at *7-9 (N.D. Ind. Sept. 3, 2015).

In contrast, this case exhibits the telltale signs of a hot pursuit. At the hearing, each witness agreed to this simple set of facts: McKissic called 911 and reported that Barnett beat her and would not let her leave; when police officers arrived and announced their presence, she ran out of the door with Barnett trailing right behind her; and Barnett then attempted to retreat inside his home. Disputes of other details, which are ample, matter not because on these undisputed facts alone, the search and seizure conducted incident to the arrest was justified, as long as the officers had probable cause.

Based on these facts, along with pictures admitted into evidence of McKissic's swollen face, a reasonable officer would conclude that there was probable cause to believe that Barnett committed the offenses of domestic battery and unlawful restraint[1] under Illinois law. *See Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) ("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the

---

[1] While unlawful restraint was not mentioned by any of the officers during their testimony as a basis for probable cause, Mersman included the charge in his report (Def. Ex. 1).

arresting officer at the time of the arrest."); *United States v. Freeman*, 691 F.3d 893, 899 (7th Cir. 2012) ("Probable cause exists when officers have a reasonable ground for belief of guilt. This standard requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.") (internal quotation marks omitted). Under these circumstances, the warrantless arrest was justified. *See Maryland v. Pringle*, 540 U.S. 366, 370 (2003) (a warrantless arrest satisfies the Fourth Amendment when supported by probable cause that the arrested individual committed a crime.). Most importantly, because probable cause was established, the police could follow Barnett from the doorway into his house as part of hot pursuit, and the search and seizure conducted incident to the arrest was justified.

**II.     Physical Harm to Police Officers or Other Persons**

An exigency also exists, and a warrantless entry is justified, when a reasonable person would believe that entry or other relevant prompt action was necessary to prevent physical harm to police officers or other persons. *United States v. Kempf*, 400 F.3d 501, 503 (7th Cir. 2005) (finding exigent circumstances for warrantless entry into home where police officers believed that the defendant could access potentially loaded gun inside); *United States v. Huddleston*, 593 F.3d 596, 600 (7th Cir. 2010) (noting that exigent circumstances exist where police reasonably believe that their safety may be threatened).

Here, the officers were aware that Barnett allegedly shot a victim in the aggravated battery incident in July 2017. Given that Barnett just beat up his girlfriend and stood in the doorway of his house with his right arm hidden behind his back, the officers would reasonably believe that Barnett had a hidden weapon behind him. Under these

circumstances, they would reasonably fear that a gun may be fired at them and possibly others inside house. Accordingly, the warrantless entry and the subsequent search and seizure to prevent harm to the police was justified.

## CONCLUSION

For the reasons set forth above, the Court **DENIES** the Motion to Suppress Evidence filed by Defendant Curtis Barnett (Doc. 41).

**IT IS SO ORDERED.**

**DATED: July 13, 2020**

                                                                                    _____
                                                                                    **NANCY J. ROSENSTENGEL**
                                                                                    **Chief U.S. District Judge**