IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 19-CR-30036–NJR |
| CURTIS W. BARNETT, | |
| Defendant. | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Motion to Set Aside Plea Agreement filed by the United States ("the Government") (Doc. 101). For the reasons set forth below, the Government's motion is denied.

### BACKGROUND

In July 2019, Barnett was charged in a Superseding Indictment with two counts: (1) possession of a firearm by a felon related to a July 2017 incident, in violation of 18 U.S.C. § 922(g)(1); and (2) possession of a firearm by a felon related to a February 2019 incident in violation of the same statute (Doc. 20). On November 8, 2019, Barnett moved to suppress the evidence seized during the arrest in his house on February 24, 2019 (Doc. 41). After a contested evidentiary hearing, the Court denied Barnett's motion to suppress (Doc. 79). Thereafter, the parties engaged in plea negotiations.

By November 2020, the parties filed a plea agreement, in which Barnett agreed to plead guilty to Count II, and the Government agreed to dismiss Count I at sentencing

(Doc. 94). The plea agreement contains the following language:

> Defendant agrees that the United States can prove by a *preponderance of the evidence* that he possessed the firearm cited in the offense of conviction in connection with the offense conduct supporting Count 1. (See USSG § 1.2(c)).

(Doc. 94, p. 1) (emphasis added). The Government notes "USSG § 1.2(c)" is a typographical error in Section I, paragraph I—and explains that the parenthetical should have read: "(See USSG § **1B**1.2(c)" (Doc. 101, p. 2). The plea agreement also includes an offense calculation. According to the plea agreement, the parties agree that the total offense level—after all factors have been considered—should be 21 (Doc. 94, p. 4).

At the Change of Plea hearing, the Court questioned Barnett, his lawyer, Mr. Adam Fein, and the prosecution regarding Barnett's competence to plead guilty at that time (Doc. 111, p. 8). The Court confirmed with Barnett his understanding of the rights he was waiving by opting to plead guilty, including: the right to plead not guilty, the right to a trial by jury of his peers, the right to the presumption of innocence accompanying a trial, the right to counsel during trial, the right to object to evidence offered during the trial and cross-examine witness, the right to present evidence and call his own witnesses, the right to remain silent during trial and avoid self-incrimination, and the right to file pretrial motions (*Id.* at pp. 8-12). Regarding each right, Barnett affirmatively communicated his understanding of his waiver (*Id.*). The Court further probed Barnett's understanding of the consequences of a guilty verdict, including the possible number of years to which Barnett could be sentenced (*Id.* at pp. 14-15). The Court also confirmed that Barnett understood the Court is not bound to either party's

recommendation (*Id*. at p. 17).

The Court continued confirming that Barnett understood the United States Probation Office ("USPO") will prepare a presentence investigation report to assist the Court, and that this is important because the guideline range in the report may turn out to be different than what Barnett anticipates (*Id*. at p. 21). Barnett understood that "sometimes [the USPO] comes up with something that the lawyers weren't expecting, sometimes it can be higher, sometimes it can be lower but [the Court] won't know until the time of sentencing [and] [i]f it turns out different than what you expect here today, you will still be bound by your plea and will not have the right to withdraw it" (*Id*. at p. 21). Barnett agreed that the Government could prove the facts related to Count II beyond a reasonable doubt (*Id*. at p. 23). [1]

> At the hearing, Assistant United States Attorney Laura Reppert explained:
>
> . . . with respect to Count 1, we are agreeing to dismiss it. However, the Defendant is making an acknowledgment that the conduct that gives rise to Count 1, that the Government could prove by a preponderance of the evidence. There is a section in the United States sentencing guidelines, specifically Section 1.2(c) that allows for the guidelines range to be calculated based upon offense conduct that could be proven by a preponderance of the evidence. So, while the Defendant is not pleading guilty to Count 1 and the United States has made an agreement to dismiss Count 1 at the sentencing, he is acknowledging that if we had to do so at a sentencing hearing or any other hearing similar, that we could prove that conduct by a preponderance of the evidence and that would essentially be fair game for the sentencing guidelines calculation.

*(Id*. at pp. 24-25). Barnett agreed—with respect to Count I—that the Government could

---

[1] The parties filed a Stipulation of Facts which describes the events of the February 2019 incident (Count II)—and the parties agreed that "the United States can prove by a *preponderance of the evidence* that he possessed the firearm cited in the offense of conviction in connection with the offense conduct supporting Count 1 " (Doc. 96, p. 2) (emphasis added).

prove those things by a preponderance of the evidence (*Id*. at p. 25).

On January 27, 2021, however, the USPO filed its Presentence Investigation Report ("PSR"), and the guidelines range did not factor in the Count I conduct (Doc. 98, pp. 5-6). After discussing this with the USPO, the Government states that USPO's decision was based on *United States v. Jett*, 982 F. 3d 1072 (7th Cir. 2020). In *Jett*, decided *after* the change of plea hearing but *before* the PSR was disclosed, the Seventh Circuit held that the *reasonable doubt standard*, instead of *preponderance of the evidence standard*, applied to U.S.S.G. § 1B1.2(d). *Id*. at 1078. Based on the Government's alleged communications with the USPO, although *Jett* discussed U.S.S.G. § 1B1.2(d), the USPO argues that the same rationale or logic should apply to U.S.S.G. § 1B1.2(c).[2] In other words, the USPO did not treat the Count I conduct as if it were another offense of conviction, and it did not invoke U.S.S.G. § 1B1.2(c), because the plea agreement acknowledged that the Count I conduct could only be proven by a *preponderance of the evidence*, as opposed to beyond a reasonable doubt. By not invoking U.S.S.G. § 1B1.2(c), the USPO found a total offense level of 13, instead of 21 as calculated by the parties (Doc. 98). The Government explains "[t]he difference in calculated guidelines range is 57 – 71 months (the parties' calculation) as opposed to 24 – 30 months (USPO's calculation)" (Doc. 101, p. 4).

On March 25, 2021, the Government filed a Motion to Set Aside Plea Agreement (Doc. 101). In its motion, the Government requests that the Court set aside the plea agreement because of mutual mistake (*Id*.). Barnett responded in opposition to the

---

[2] Notably, the Government has not filed objections to the PSR. Objections were due by February 10, 2021 (Doc. 98).

Government's Motion to Set Aside Plea Agreement (Doc. 105).

## Discussion

At sentencing, a district court calculates the applicable Sentencing Guidelines range with the help of the PSR. *Gall v. United States*, 552 U.S. 38 (2007). The Guidelines is the "starting point and the initial benchmark" for sentencing. *Id.* at 49. The Guidelines Application Instructions dictate the order in which provisions of the Guidelines Manual are to be applied. U.S.S.G. § 1B1.1. The Court must first "[d]etermine, pursuant to § 1B1.2 (Applicable Guidelines), the offense guideline section . . . applicable to the offense of conviction." *Id.* § 1B1.1(a). The Applicable Guidelines, § 1B1.2, provides, inter alia, that the court must "(a) [d]etermine the offense guideline section in Chapter Two (Offense Conduct) . . ." and "(b) [a]fter determining the appropriate offense guideline section . . . determine the applicable guideline range in accordance with § 1B1.3 (Relevant Conduct)." *Id.* § 1B1.2(a)-(b). Important to the Government's Motion to Set Aside, U.S.S.G. § 1B1.2(c) provides: "A plea agreement (written or made orally on the record) containing a stipulation that specifically establishes the commission of additional offense(s) shall be treated as if the defendant had been convicted of additional count(s) charging those offense(s)." *Id.* § 1B1.2(c).

Arguing that the plea agreement is a contract—and should be rescinded on the basis of *mutual mistake*—the Government concludes that "[t]he parties did not believe that using 'preponderance of the evidence' instead of 'beyond a reasonable doubt' carried any legal consequence[.]"(Doc. 101, p. 4). The Government cites *United States v. Johnson*, 342 F. 3d 731 (7th Cir. 2003), which acknowledged that "[i]t is well established that simply a

preponderance of the evidence is all that is required for a factual finding under the Sentencing Guidelines." *Id*. at 735 (quoting *United States v. Porter*, 23 F. 3d 1274, 1277 (7th Cir. 1994)). The Government continues arguing that the "invocation of USSG § 1B1.2(c) and Defendant's acknowledgment that the Government could prove the conduct supporting count 1 [ ], the parties bargained for the Count 1 conduct to factor in to the guidelines calculation" (Doc. 101, p. 3). "This intention is manifested in the offense level calculation" (*Id*.).

The Court has not found a single case within the Seventh Circuit rescinding a plea agreement because of mutual mistake in failing to anticipate a change in law. Perhaps, it is because the Supreme Court is clear: "a voluntary plea of guilty intelligently made in the light of the *then applicable law* does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." *Brady v. United States*, 397 U.S. 742, 757 (1970) (emphasis added). Not only is the Supreme Court clear, but the Seventh Circuit has "consistently rejected arguments that an appeal waiver is invalid because the defendant did not anticipate subsequent legal developments." *United States v. McGraw*, 571 F.3d 624, 631 (7th Cir. 2009); *see also United States v. Lockwood*, 416 F.3d 604, 608 (7th Cir. 2005) (denying defendant's suggestion that his appeal waiver was invalid, and noting that "[t]he fact that [defendant], the government, and the district court failed to anticipate *Booker* or its sweeping effect on federal guidelines sentencing does not change this conclusion"). This is consistent with the Seventh Circuit's "long-expressed view that plea-bargain appeal waivers involve risk[.]" *McGraw*, 571 F.3d at 631 (quoting *United States v. Bownes*, 405 F.3d 634, 636 (7th Cir. 2005)) ("By binding oneself one assumes the risk of

future changes in circumstances in light of which one's bargain may prove to have been a bad one. That is the risk inherent in all contracts; they limit the parties' ability to take advantage of what may happen over the period in which the contract is in effect").

Seventh Circuit jurisprudence provides that a mistake in failing to anticipate a change in law "is not the kind of mistake that entitles parties to set aside a plea agreement." *United States v. Cieslowski*, 410 F.3d 353, 362 (7th Cir. 2005) (citing *Bownes*, 405 F.3d at 637-38). "*Bownes* held that a later change in law that is favorable to the defendant—even one as major as *Booker*—is not enough to relieve a defendant of his [or her] bargain." *Id*. Indeed, the Seventh Circuit has at minimum, *in dicta*—and at most, directly—struck down the notion that "the government would be able to rescind a plea agreement favorable to the defendant if an intervening decision had brought about a 'sea change' in favor of the government; what is sauce for the goose is sauce for the gander." *Bownes*, 405 F.3d at 638.

Besides binding precedent, Barnett's response acknowledges "[t]o set aside an agreement, the parties must make a mutual mistake about an essential term of the agreement" (Doc. 105, p. 1). Barnett then notes that "[n]either the guideline calculation nor its range of punishment is an essential term of a Rule 11(c)(1)(B) agreement" (*Id.* at p. 2). Barnett's response continues pointing out that this is a Rule 11(c)(1)(B) agreement, and "[i]n the context of Federal Rule of Criminal Procedure 11(c)(1)(B) agreements, the essential terms are the nature of the offense charged, the factual basis for the plea, and the limits of the district court's sentencing authority" (Doc. 105, pp. 1-2). Thus, according to Barnett, the parties did not make a mutual mistake about an essential term of the plea

agreement.

The Court agrees. In *United States v. Barnes*, 83 F.3d 934, 938 (7th Cir. 1996), the Court acknowledged the following:

> [W]hen the government and a defendant agree on a guilty plea regulated by [Rule 11(c)(1)(B)], the punishment is not an essential term of the plea agreement. The agreement is complete when the parties agree on the nature and extent of the defendant's culpability. They leave the determination of a sentence to the discretion of the district court, as guided by the sentencing guidelines and by the applicable criminal statutes.

The Court further noted that "the defendants in many criminal cases can enter into valid plea agreements, and district courts can enforce them, without the parties' knowing in advance exactly what sentence the court will impose." *Id*. at 939.

## CONCLUSION

For these reasons, the Motion to Set Aside Plea Agreement filed by the Government (Doc. 101) is **DENIED**.

**IT IS SO ORDERED.**

**DATED:  June 1, 2021**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**